**Michael SHOAF, Plaintiff,**

v.

**Ralph A. MATTEO and Stephen Brzezinski, Defendants.**

**No. 3:97CV1861 (WWE).**

United States District Court, D. Connecticut.

June 6, 2000.

John R. Williams, Williams & Pattis, New Haven, CT, for plaintiff.

Thomas J. Davis, Jr., Atty. General's Office, Hartford, CT, for defendants.

## RULING ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

EGINTON, Senior District Judge.

Plaintiff, Michael Shoaf, brings this action against two employees of the Connecticut Department of Mental Health and Addiction Services for allegedly depriving the plaintiff of his constitutional right to a family relationship with his mentally handicapped father in violation of Title 42 U.S.C. 1983, arising out of the plaintiff's father's discharge from a state mental facility.

Pending before the Court is the defendants' motion for summary judgment. For the reasons set forth below, the defendants' motion [Doc. # 13] will be granted.

## FACTS

The following findings of fact are drawn from the defendants' 9(c)(1) submission, and accompanying affidavits and depositions.

### Parties

Plaintiff, Michael Shoaf, resides in West Hartford, Connecticut. He is the son of John Shoaf.

During all the relevant times, defendants Matteo and Brzezinski were employees of Cedarcrest Hospital in Newington, Connecticut. Cedarcrest is a state psychiatric facility and a division of the Connecticut Department of Mental Health and Addiction Services. Defendant Matteo was the Director of Community Services Division of Cedarcrest, and defendant Brzrezinski was a Psychiatric Social Work Associate.

### Background of John Shoaf

On April 27, 1996, John Shoaf was arrested in West Hartford and charged with credit card theft, larceny, criminal impersonation, forgery and interfering with an officer. John Shoaf's address set forth in the police report was 95 Williams Street, New Haven, the same as his half-sister Dale Fuller.

On April 29, 1996, Superior Court Judge Smith ordered that John Shoaf be examined to determine if he would be competent to stand trial. During the hearing, Michael Shoaf advised the Superior Court that he was trying to pursue the option of becoming the conservator of his father, at which time the court inquired as to the current residence of John Shoaf. Upon John Shoaf's representation to the court that his current residence was the Columbus House in New Haven, the court informed Michael Shoaf that he should make an application in the New Haven Probate Court in order to further pursue conservatorship.

Following the hearing, John Shoaf was committed to the custody of the Commissioner of Corrections of the State of Connecticut.

On May 6, 1996, a clinical team of Forensic Services Hartford Court Clinic of the State of Connecticut Department of Mental Health examined John Shoaf and unanimously determined that the he was not competent to stand trial. However, the team concluded that John Shoaf could be restored to competency within 90 days if committed to an inpatient health facility for treatment.

On May 16, 1996, Judge Smith found that John Shoaf was not competent to stand trial and ordered him confined to the Cedarcrest Hospital in Newington, Connecticut, for 90 days.

On May 22, 1996, Michael Shoaf applied to the probate court for the District of West Hartford to be appointed the conservator of the estate and person of his fa-

ther. In the application, Michael Shoaf represented that John Shoaf's home address was 36 Shepard Road, West Hartford, Connecticut. When Michael Shoaf originally filled out the application for appointment as conservator, however, he entered the words "None—Homeless" in the space provided for John Shoaf's home address. This entry was subsequently covered up and Michael Shoaf's address was filled in its stead.[1]

On June 13, 1996, the probate court in West Hartford appointed Michael Shoaf as the conservator of John Shoaf. At no time during Michael Shoaf's conservatorship did he file documents in Probate Court seeking the commitment of his father. Plaintiff alleges, however, that he expressed his desire to defendant Brzezinski and Dr. Zakaria about committing his father.

Before John Shoaf's August 15, 1996 court date, Mr. Brzezinski spoke with the plaintiff concerning the potential resolution of the August 15, 1996 hearing. During the conversation, Michael Shoaf told Mr. Brzezinski that he would not be able to attend the court hearing. Michael Shoaf knew that his father would be transported to a shelter or boarding house in New Haven if John Shoaf was found competent to stand trial and if he was released unconditionally. Michael Shoaf avers that he sensed resistance by Cedarcrest employees to his preference for his father's permanent placement at that facility.

On August 15, 1996, John Shoaf was taken from Cedarcrest Hospital to the Superior Court in West Hartford by the Sheriff's Department. Judge Smith found John Shoaf competent to stand trial. John Shoaf pled guilty to charges of credit card theft, larceny, criminal impersonation and interfering with an officer. Upon recommendation by the State's Attorney, Mr. Shoaf was granted unconditional discharge in lieu of time served. The Court noted that Michael Shoaf was the appointed conservator and that he was not present in Court.

After his release from court, John Shoaf was discharged from Cedarcrest. As per his request, hospital employees transported him to Columbus House in New Haven.

Plaintiff alleges that the discharge of John Shoaf: 1) was carried out in reckless disregard of the fact that it would cause injury or death to the plaintiff's ward; 2) violated the plaintiff's individual right to a family relationship with his father as guaranteed by the First, Fourth and Fourteenth Amendments to the Constitution; 3) violated the right of the plaintiff's ward to be [free] from deprivation of life and liberty without due process of law; 4) violated due process of law; and 5) caused John Shoaf extreme emotional distress.[2]

## DISCUSSION

Summary judgment pursuant to Fed. R.Civ.P. 56(c) is appropriate if the court finds, after viewing the facts in the light most favorable to the nonmoving party, that there is no genuine issue of material fact pertaining to a given issue and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The burden is on the moving party to show that no material facts are in dispute. *Donahue v. Windsor Locks Bd. of Fire Comm'rs*, 834 F.2d 54, 57 (2d Cir.1987). A dispute over a material fact exists if the evidence would allow a reasonable jury to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper. *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir.1991). The court's role in considering summary

---

1. The record does not reflect when the entry was corrected, or by whom.

2. The Court notes that all of the plaintiff's claims are dependent on the facts that: (1) there existed a valid conservatorship which the defendants could violate; and (2) the defendants' acts burdened the constitutional relationship of the plaintiff with his father.

judgment is not to resolve disputed issues, but only to determine the existence of factual issues to be tried. *Knight v. United States Fire Ins. Co.,* 804 F.2d 9, 11 (2d Cir.1986).

In the context of a motion for summary judgment, disputed issues of fact are not material if the moving party would be entitled to judgment as a matter of law, even if the disputed issues were resolved in favor of the nonmoving party. Such factual disputes, however genuine, are not material, and their presence will not preclude summary judgment. *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505.

*Fed.R.Civ.P 56(e) and Local Rule 9(c)*

Both the Federal Rules of Civil Procedure and the Local Rules of the district court place certain burdens on a party opposing a motion for summary judgment. Fed.R.Civ.P. 56(e) provides:

When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Local Rule 9(c) augments this requirement by providing that

There shall be annexed to a motion for summary judgment a document entitled "Local Rule 9(c)1 Statement," which sets forth in separately numbered paragraphs a concise statement of each material fact as to which the moving party contends there is no genuine issue to be tried. All material facts set forth in said statement will be deemed admitted unless controverted by the statement required to be served by the opposing party in accordance with Rule 9(c)(2).

Local 9(c)(2) requires that papers opposing a motion for summary judgment include separate, short and concise statements of the material facts as to which it is contended that there exists a genuine issue to be tried. *See* Local Rule 9(c)(2).

█ In the present action, the plaintiff makes no showing warranting the denial of summary judgment on any of his claims. He presents no affidavits or other evidence to controvert any of the pertinent assertions in defendants' moving papers. Rather, he merely relies on the assertions of his complaint. Therefore, it is this Court's determination that the plaintiff plainly does not comport with Rule 56(e), and such non-compliance warrants summary judgment. *See Dusanenko v. Maloney,* 726 F.2d 82 (2nd Cir.1984).

Furthermore, the plaintiff does not serve any statement pursuant to Local Rule 9(c)(2) that sets forth any material fact as to which he contends a genuine issue remains to be tried. Plaintiff's submission, which merely disagrees with part of the defendants' Local Rule 9(c)(1) statement and does not cite any evidence, does not create genuine issues of material fact. Consequently, the facts set forth in the defendants' Rule 9(c)(1) statement will be properly deemed admitted. *See Kusnitz v. Yale University School of Medicine,* 3:96cv2434(EBB) (July 16, 1998)

█ Those facts establish that: (1) the plaintiff does not have standing to bring any action as conservator on behalf of his father John Shoaf, because John Shoaf was never domiciled in West Hartford where the plaintiff applied to the probate court for conservatorship over his father, and therefore the probate court's appointment of the plaintiff as conservator over his father was invalid. *See Killen v. Klebanoff,* 140 Conn. 111, 98 A.2d 520 (1953); and (2) the defendants did not burden the constitutionally protected relationship of the plaintiff with his father and therefore the defendants' actions did not violate the plaintiff's constitutionally protected right to a family relationship with his mentally handicapped father.

118

Because the above facts are uncontroverted by the plaintiff, the entry of summary judgment dismissing the complaint is appropriate.

### CONCLUSION

For the reasons stated above, the defendants' Motion for Summary Judgment [Doc. # 13 ]is GRANTED.

The Clerk is instructed to enter judgment in favor of the defendants and to close this case.